Statement of Facts For Each Cause of Action

Claim I (continued)

Adam Bircovici, Anthony Avila, Joe Callian, Charles Bennett, the City of Los Angeles, Carmen A. Trutanich and each of their predecessors over the course of several decades, each of who are final decision makers of this policy. Defendants have failed to train, supervise and control their subordinates, and failed to institute sufficient policies and safeguards to insure that the prosecution of OIS are handled in an even-handed and non-discriminatory fashion.

Claim II

The following civil rights have been violated:

1. Retaliation for Filing Inmate Grievances
2. Retaliation for Exercise of First Amendment Rights
3. Retaliatory Transfer - Classification
4. Interference with Faretta Rights
5. Violation of "Work Product" and "Attorney-Client" Privileges
6. Obstruction of Court Access
7. Censorship of Authorized Mail
8. Denial of Rights to Pre-Trial Detainees
9. Denial of Due Process at Wilson Administration Hearing
10. Municipal Liability
11. Failure to Intercede / Prevent
12. Failure to Train, Supervise and Control Subordinates
13. Established Policy, Custom or Practice Caused Violation
14. Civil Conspiracy

Supporting Facts:

1. After arrest for the 7/11/2008 criminal charges, plaintiffs exercised their Sixth Amendment Right of Self-Representation in the prosecution in criminal case No. BA 343-411-01/02

(26 of 45)

Statement of Facts For Each Cause of Action

Claim II (continued)

2. Once plaintiff Floyd Nelson exercised his Sixth Amendment right of self-representation, LASD personnel began to interfere with and obstruct his access to his legal defense team and the court.

3. On or about 10/1/2010 LASD MCJ mailroom personnel John/Jane Doe(s) no. 1-5 began to reject and censor plaintiff Floyd Nelson's incoming mail without notice or penological justification. As a pretrial detainee, plaintiff is entitled to send and receive mail that do not pose a threat to institutional security.

4. The LASD at MCJ has instituted a policy, custom and practice of not notifying inmates when incoming mail is considered contraband or a threat to institutional security and censored for any reason. This policy, custom and practice has been authorized and approved by defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin D. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz, the County of Los Angeles, William T. Fujioka and each of their predecessors over the course of several decades. Each of who are final decision makers of this policy, practice and custom. Defendants have failed to train, supervise and control their subordinates and failed to institute sufficient policies and safeguards to insure LASD mailroom staff are not using personal bias and prejudice to censor authorized mail and violate inmates' First Amendment rights.

5. On or about 12/7/2010, 12/16/2010, 1/22/2011, 4/5/2011, 4/12/2011 and 10/22/2011 plaintiff Floyd Nelson submitted several inmate grievances challenging the censorship and rejection of his authorized mail without notice. None of these LASD inmate grievances were ever responded to by LASD personnel.

6. The LASD at MCJ has instituted a policy, custom and practice of not responding to inmate grievances challenging the censorship and rejection of authorized mail. This policy, custom and practice has been authorized and approved by defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin D. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz, John/Jane Doe(s) no. 1-5, the County of Los Angeles, William T.

(27 of 45)

Statement of Facts for Each Cause of Action

Claim II (continued)

Fujioka  and each of their predecessors over the course of several decades, each of who are final decision makers of this policy, practice and custom. Defendants have failed to train, supervise and control their subordinates, and failed to institute sufficient policies and safeguards to insure inmate grievances are processed and addressed to protect inmates' First Amendment Rights.

7. On or about 4/4/2011 LASD Legal Staff CA Allen, assigned to the MCJ attorney room, refused to allow plaintiff Floyd Nelson's court appointed private investigator to pass him (after inspection for contraband) internet-generated legal material (i.e. case law from Lexis-Nexus, Los Angeles Times newspaper articles, LAPD press releases relating to several SIS incidents) relevant to his pending criminal case which he intended to use as both research and exhibits to be attached to motions to be filed. Defendant Allen stated to plaintiff that internet-generated materials and newspaper articles were not allowed in LASD MCJ.

8. The LASD at MCJ has instituted a policy, custom and practice of not allowing internet-generated materials and newspaper articles into the facility. This policy, custom and practice has been authorized and approved by defendants: Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin D. Cavanaugh, David L. Ferider, Alexander Yim, Daniel Cruz, Legal LT., Lavey Legal Sgt., John/Jane Doe(s) no. 1-5, the County of Los Angeles, William T. Fujioka  and each of their predecessors, each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates and failed to institute sufficient policies and safeguards to insure internet-generated materials and newspaper articles that do not pose a threat to institutional security are allowed into the facility in order to protect inmates' First Amendment Rights.

9. During the course of defendant Allen inspecting the above-mentioned internet-generated materials and newspaper articles for contraband, she chose to read plaintiff's remaining legal documents which contained "work product", "privileged information"

Statement of Facts For Each Cause of Action

Claim II (continued)

and "defense strategy" line by line and word for word. Once plaintiff Floyd Nelson informed defendant Allen that well established law did not allow such "Reading", but only "cursory" viewing in the presence of the inmate, he was told by defendant Allen to step approximately 5-10 feet away from her while she inspected the legal documents, otherwise plaintiff would not receive them. Plaintiff step away from his legal document as instructed as defendant Allen continued to read them without his authorization.

10. The LASD at MCJ has instituted a policy, custom and practice of allowing its legal staff to read "line by line" and "word for word" Pro Per inmates' legal documents that contain "work product", "privilege information" and "defense strategy." This policy, custom and practice was authorized and approved by defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin D. Cavanaugh, David L. Fender, Alexander Yim, Darnel Cruz,       Legal Lt., Lavey Legal Sgt., John/Jane Doe(s) no. 1-5, William T. Fujyoka, the County of Los Angeles, and each of their predecessors, each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates and failed to institute sufficient policies and safeguards to insure LASD personnel know the importance of not infringing on or violating Pro Per inmates' Sixth Amendment rights.

11. On or about 4/5/2011 plaintiff Floyd Nelson submitted a LASD inmate grievance challenging the unprofessional conduct of defendant Allen on 4/4/2011 in the MCJ attorney room. This inmate grievance was never "officially" responded to by LASD personnel. "Unofficially" LASD legal staff CA. D. Hinton confronted and informed plaintiff that it would not be to his best interest as a Pro Per inmate to file inmate grievances against LASD legal staff.

12. The LASD at MCJ has instituted a policy, custom and practice of threatening and retaliating against Pro Per inmates who challenge the unprofessional conduct of LASD MCJ legal staff. This policy, custom and practice was authorized and approved by defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin D. Cavanaugh, David L. Fender, Alexander Yim, Darnel Cruz,       Legal Lt., Lavey Legal Sgt.

Statement of Facts For Each Cause of Action

<u>Claim II</u> (continued)

William T. Fujioka, the County of Los Angeles and each of their predecessors, each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates and failed to institute sufficient policies and safeguards to insure that inmates are not threatened or retaliated against for their exercise of constitutional rights.

13. On or about 4/24/2011 plaintiff Floyd Nelson submitted a LASD inmate complaint directly to defendant Leroy D. Baca regarding LASD personnel excessive use of force against Pro Per inmates housed in Module 2500 at MCJ and the obstruction of Pro Per inmates rights and privileges under <u>Faretta v. California</u> (1975) 422 US 806.

14. A copy of this inmate complaint was also submitted to the Supervising Judge of the Los Angeles County Superior Court (Honorable Patricia Schnegg) and the Jail Project Coordinator of the American Civil Liberties Union (ACLU) (Esther Lim).

15. The LASD has instituted a policy, custom and practice of using excessive force against inmates and obstructing Pro Per inmates rights and privileges. This policy, custom and practice was authorized and approved by defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz, _____ Legal LT., Lavey Legal Sgt. William T. Fujioka, the County of Los Angeles and each of their predecessors for over the course of several decades, each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates and failed to institute sufficient policies and safeguards to insure that excessive force is not used and that Pro Per inmates' Faretta rights are not infringed upon or obstructed.

16. On 5/1/2011 LASD MCJ Sr. Jail Liaison Gilbert instituted a policy, custom and practice within the 1750 High Power module where all communications regarding incoming and outgoing mail would be restricted to post cards only. Although this new policy, custom and practice was not to affect legal mail, it did.

17. On 5/1/2011 Plaintiff Alonzo Harris was housed in the 1750 High Power module

Statement of Facts for Each Cause of Action

Claim II (continued)

and at the time was self represented in case no. BA 343 411-01. On several occasions, once this new "post card only" policy, custom and practice was implemented, plaintiff was prohibited from communicating through the mail with his court appointed experts (i.e. DNA identification, video enhancement and private investigator) since the information he sought to send to and receive from each of these experts kept being rejected/censored by defendant Gilbert and defendants John/Jane Doe(s) no. 1-5 because it was contained on regular writing paper and not on post cards as required by the newly implemented "post card only" policy, custom and practice.

18. Each time any of these communications (legal) were rejected/censored by defendant Gilbert and defendants John/Jane Doe(s) no. 1-5, plaintiff Alonzo Harris submitted LASD inmate grievances challenging the rejection/censorship and legality of the new "post card only" policy, custom and practice. None of these LASD inmate grievances were ever "officially" responded to by LASD personnel. "Unofficially" defendant D. Hinton told plaintiff Alonzo Harris to quit complaining like his co-defendant (plaintiff Floyd Nelson) if he wanted to continue getting his remaining Pro Per privileges handled in a timely manner. When plaintiff Alonzo Harris asked defendant D. Hinton what did he mean by that comment, defendant D. Hinton told him to continue filing inmate grievances and find out

19. In addition to having a need to communicate through the mail to his court appointed experts, plaintiff Alonzo Harris was also in the process of trying to locate and communicate with cellular phone triangulation experts via the mail in order to determine which to select for court appointment. Outgoing mail to each of these experts were also rejected by defendant Gilbert and Module 1750 personnel due to non-compliance with the new "post card only" policy, custom and practice. As a direct result of the new "post card only" policy, custom and practice, plaintiff Alonzo Harris was forced to relinquish his Pro Per status in criminal case no. BA 343 411-01 due to his inability to effectively communicate with his court appointed experts and others relevant/essential to his

Statement of Facts for Each Cause of Action

Claim II (continued)

defense through the mail.

20. On 5/1/2011 defendant Gilbert instituted a policy, custom and practice within the 1750 High Power module where all outgoing telephone calls would be restricted to "immediate family members only" and "no cell phones." This new policy, custom and practice directly affected plaintiff Alonzo Harris' ability to contact and communicate with his court appointed experts, defense witnesses and others relevant/essential to his criminal defense in case no. BA 343 411-01 that do not fit the classification of "immediate family" and had access to more than a cell phone.

21. The same LASD inmate grievance that was filed challenging the new "post card only" policy was also used to challenge this new telephone call restriction policy, since the each came from the same LASD directive instituted by defendant Gilbert for 1750 High Power inmates. As a direct result of this new "telephone call restriction" policy, custom and practice, plaintiff Alonzo Harris was forced to relinquish his Pro Per status in criminal case no. BA 343 411-01 due to his inability to contact his court appointed experts, defense witnesses and others relevant/essential to his criminal defense due to their not being "immediate family" and did not have access to more than a cell phone.

22. The LASD at MCJ has instituted a policy, custom and practice of requiring inmates housed in the 1750 High Power module to only send and receive mail on post cards only and to only be allowed to telephone immediate family members who have a land line phone. This policy, custom and practice was authorized and approved by defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,           Legal Lt., Lavey Legal Sgt., William T. Fujioka, the County of Los Angeles and each of their predecessors, each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates and have failed to institute sufficient policies and safeguards to insure that pretrial detainees' first

(32 of 45)

Statement of Facts For Each Cause of Action

Claim II (continued)

and Sixth Amendment Rights are protected

23. On 5/5/2011 and 5/6/2011 plaintiff Floyd Nelson submitted LASD inmate complaints directly to defendant Leroy D. Baca concerning constitutional violations within the 2500 Pro Per Module (i.e. law library denial, shower denial and cell/Tier lights activation schedule) and the MCJ attorney room against defendant Allen (i.e. legal documents rejection).

24. On or about 5/10/2011 LASD LT. Mike Bornman and Dep. J.D. Martinez from the LASD "Special Projects" came to interview plaintiff Floyd Nelson regarding his inmate complaint filed on or about 4/24/2011. This interview was recorded.

25. Soon after this interview defendant D. Hinton confronted and informed plaintiff Floyd Nelson of his awareness of and dissatisfaction with the 5/10/2011 interview with senior LASD personnel as it related MCJ legal staff in the attorney room and how the 2500 Pro Per Module was being ran. Plaintiff informed defendant D. Hinton that if things were being ran according to the law and the established Pro Per rules, then he would not have to complain to outsiders.

26. On or about 6/26/2011 ACLU legal staff came to interview plaintiff Floyd Nelson regarding his LASD inmate complaint filed on or about 4/24/2011.

27. Soon after this interview defendant D. Hinton confronted and informed plaintiff Floyd Nelson of his awareness of and dissatisfaction with the 6/26/2011 interview with the ACLU and that when it was all said and done, no matter who plaintiff complained to, nothing would actually change but plaintiff's awareness of who actually holds the power within MCJ. Plaintiff Floyd Nelson asked defendant D. Hinton what did he actually mean by this comment, and he was told that time would reveal all.

28. On or about 7/28/2011 plaintiff Floyd Nelson testified in the Los Angeles County Superior Court on behalf of Pro Per inmate Brian Alexik in criminal case No. BA370488 regarding LASD personnel searching and removing items

(33 of 45)

Statement of Facts For Each Cause of Action

Claim II (continued)

From the Pro Per inmate's cell when he was not present.

29. In preparation For, during, and soon after this in-court testimony defendant's Lavey (Legal Sgt.), D. Hinton and other LASD personnel came into the 2500 Pro Per module over a several day period and selectively and repeatedly searched each of the Pro Per inmate witnesses cells who had volunteer/agreed to testify in criminal case no. BA 370488 on behalf of Pro Per inmate Brian Alexik, during which time both defendants Lavey and D. Hinton stated to those inmates whose cells were being searched that "this is what you can expect when you agree to testify against LASD personnel."

30. The LASD has instituted a policy, custom and practice of using fear, intimidation, threats and violence as a means of retaliation against inmates for the exercise of first Amendment Rights. This fear, intimidation, threats and violence come in various forms, primary of which are: cancellation of visits, non-issuance/withholding mail, destruction and disposal of personal property during cell searches, verbal threats of violence, physical assaults, cancellation of privileges, etal. This policy, custom and practice was authorized and approved by defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt. Lavey Legal Sgt. John/Jane Doe(s) no. 1-5, William T. Fujioka, the County of Los Angeles, and each of their predecessors over the course of several decades. Each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates and failed to institute sufficient policies and safeguards to insure that fear, intimidation, threats and violence are not used as means of retaliation against inmates for the exercise of first Amendment rights which was the moving force behind the constitutional violation.

31. On or about 8/16/2011 ACLU legal staff came to interview plaintiff Floyd Nelson regarding his witnessing LASD personnel use excessive force against Pro Per inmate William Tilman in the 2500 Pro Per module.

32. Soon after this interview defendant D. Hinton confronted and informed plaintiff Floyd

(34 of 45)

Statement of Facts For Each Cause of Action

Claim II (continued)

Nelson that he was aware of the 8/16/2011 interview and that plaintiff would likely suffer consequences for giving statements to the ACLU against LASD personnel.

33. The LASD has instituted a policy, custom and practice of witness intimidation as a means of discouraging inmates from giving adverse testimony against LASD personnel. This policy, custom and practice was authorized and approved by defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin D. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz, _____ Legal LT., Lovey Legal Sgt., William T. Fujioka, the County of Los Angeles and each of their predecessors over the course of several decades, each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates, and failed to institute sufficient policies and safeguards to insure that witness intimidation by LASD personnel is not used to dissuade inmates from exercising their First Amendment rights which was the moving force behind the constitutional violation.

34. On 9/16/2011 plaintiff Floyd Nelson's court appointed private investigator was discovered by LASD legal staff to have attempted to pass non-legal documents into the facility in a stack of legal documents intended for plaintiff through the MCJ attorney room. At the time of this infraction plaintiff was no where in the MCJ attorney room nor did he ever gain possession of any of the non-legal documents that were attempted to be passed.

35. On 10/3/2011 plaintiff Floyd Nelson was first informed of the 9/16/2011 infraction by the Superior Court Judge in charge of criminal case no. BA 343 411-02 who instructed plaintiff to select another private investigator since his previous one had been suspended from the court approved panel pending investigation of the 9/16/2011 infraction.

36. Upon returning from court to the 2500 pro per module, defendant D. Hinton "informally" notified plaintiff Floyd Nelson that he was conducting an internal LASD investigation into the 9/16/2011 infraction and that although no evidence actually connected plaintiff to the actual infraction committed, plaintiff had irked several

Statement of Facts For Each Cause of Action

Claim II (continued)

within the LASD Legal Department with his willingness to Testify on behalf of Pro Per inmate Brian Alexik in criminal case no. BA 343 411-02 against LASD personnel, plaintiff's previous inmate grievances/complaints against MCJ legal staff, his written and recorded statements to LASD Internal Investigators and the ACLU regarding LASD Excessive use of Force against Pro Per inmate William Tilman and his ongoing complaint about obstruction and interference with Pro Per inmates rights within the 2500 Pro Per module, a Wilson Administrative Hearing would be held to Effectuate his removal from the 2500 Pro Per module.

37. On or about 10/5/2011 the ACLU issued its 2011 Annual Report which list plaintiff Floyd Nelson (anonymously) as a witness to several use of force allegations against LASD MCJ personnel.

38. Soon thereafter defendant D. Hinton confronted and informed plaintiff Floyd Nelson that he and others within the LASD were able to access and view the 2011 ACLU Annual Report on the internet and what they saw was not acceptable and definite consequences would result from it.

39. On or about 10/10/2011 LASD Internal Criminal Investigator(s) Sgt. John Wargo and Sgt. _____ came and interviewed plaintiff Floyd Nelson at MCJ regarding LASD personnel Excessive use of force against Pro Per inmate William Tilman in the 2500 Pro Per module. This interview was recorded.

40. Soon after this interview defendant D. Hinton confronted and informed plaintiff Floyd Nelson that he was aware of the 10/10/2011 interview with the LASD Internal Criminal Investigators and that it would not be to plaintiff's best interest to continue with these interviews.

41. On 10/21/2011 defendant D. Hinton served plaintiff Floyd Nelson with Notice of Wilson Administrative Hearing for the 9/16/2011 infraction.

42. The LASD has instituted a policy, custom and practice of using Wilson Administrative Hearings as a means of retaliation and to stifle descent and legal protest from

( 36 of 45 )

Statement of Facts for Each Cause of Action

Claim II (continued)

Pro Per inmates. This policy, custom and practice was authorized and approved by defendants LeRoy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz, Legal Lt., Lavey Legal Sgt., William T. Fujioka, the County of Los Angeles and each of their predecessors over the course of several decades, each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates, and failed to institute sufficient policies and safeguards to insure Wilson Administrative Hearings are not used a means of retaliation or to stifle descent and legal protest which was the moving force behind the constitutional violation.

43. On 10/25/2011 the Wilson Administrative Hearing was held more than 48 hours after notice was provided without calling plaintiff Floyd Nelson's requested witnesses and with defendant D. Hinton serving as the primary hearing officer.

44. On 10/28/2011 defendant D. Hinton issued plaintiff Floyd Nelson a Notice of Finding of Wilson Administrative Hearing, completely revoking plaintiff's in-custody Pro Per privileges which means he will no longer have access to the facility's law library computers, phones and he would be moved from the 2500 Pro Per module into the general population where his legal property would no longer be authorized and protected. Defendant D. Hinton told plaintiff that these were the things that he could get away with doing against those inmates who chose to challenge the authority of the LASD, and that this was only the start of things to come.

45. The LASD has instituted a policy, custom and practice of denying Pro Per inmates due process during Wilson Administrative Hearings. This denial of due process comes in various forms, primary of which are: failure to comply with Superior Court Pro Per Rule 6.41, not documenting reason(s) why requested witness(es) not available for cross-examination at hearing, and hearing being held by impartial and unbiased board members who did not have a stake in the outcome nor participated in the investigation. This policy, custom and practice was authorized and approved by defendants LeRoy D. Baca, Larry

(31 of 45)

Statement of Facts for Each Cause of Action

Claim II (continued)

A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,          Legal Lt. Lavey Legal Sgt. William T. Fujioka, the County of Los Angeles and each of their predecessors over the course of several decades, each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates, and failed to institute sufficient policies and safeguards to insure Pro Per inmates Due Process during Wilson Administrative Hearings which was the moving force behind the constitutional violation.

46. On or about 10/29/2011 plaintiff Floyd Nelson provided defendants D. Hinton, Lavey Legal Sgt and          Legal Lt. a copy of his LASD Inmate Appeal challenging the Wilson Administrative Hearing Finding to completely revoke his in-custody Pro Per "privileges", at which time defendant Lavey stated to plaintiff that he was fully aware of who plaintiff was and that once plaintiff decided to make statements to outside agencies against LASD personnel his fate was sealed, so quit complaining. This inmate appeal was NEVER responded to by LASD personnel.

47. The LASD has instituted a policy, custom and practice of not responding to inmate appeals challenging Wilson Administrative Hearing findings. This policy, custom and practice was authorized and approved by defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz, Legal Lt. Lavey Legal Sgt. William T. Fujioka, the County of Los Angeles, and each of their predecessors over the course of several decades, each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates, and failed to institute sufficient policies and safeguards to insure Pro Per inmates right to appeal Wilson Administrative Hearing Finding the denial of which was the moving force behind the constitutional violation.

48. On 11/3/2011 plaintiff Floyd Nelson elected to retain his in-court Pro Per status as a self-represented defendant in criminal case no. BA 343 411-02.

(38 of 45)

Statement of Facts For Each Cause of Action

Claim II (continued)

49. On 11/16/2011 plaintiff Floyd Nelson refused an interview with LASD Internal Criminal Investigators Sgt. John Wargo and Sgt. _____ based on his fear and belief of further reprisal and retaliation for providing incriminating testimony against LASD personnel within the 2500 Pro Per module and MCJ legal staff. This interview refusal was recorded.

50. Soon thereafter plaintiff Floyd Nelson was moved from the 2500 Pro Per module to the general population in Module 2700 by defendant D. Hinton who informed plaintiff that his move was ordered by LASD MCJ higher echelon based upon plaintiff's cooperation with LASD Internal Criminal Investigators.

51. It was approximately from this point forward that plaintiff Floyd Nelson began to experience serious problems and delays in the processing of his incoming and outgoing legal mail, receiving access to legal supplies (i.e. writing tablets, postage, et al.) and a pencil sharpener, access to court authorized Pro Per ancillary defense funds to make phone calls relevant to his criminal defense, each of which is monitored and controlled by the MCJ legal department.

52. The LASD at MCJ has instituted a policy, custom and practice of using their authority and control to retaliate against and penalize Pro Per inmates for their exercise of constitutional rights. This authority and control come in various forms, primary of which are: delays in the processing of incoming and outgoing legal mail, receiving access to legal supplies, pencil sharpeners and Pro Per phone calls. This policy, custom and practice was authorized and approved by defendants LeRoy D. Baca, Larry L. Waldie, Paul K. Tanaka, Marvin D. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz, Legal Lt., Lavey, Legal Sgt., John/Jane Doe(s) no. 1-5, William T. Fujioka, the County of Los Angeles, and each of their predecessors over the course of several decades, each of who are final decision makers of this policy. Defendants have failed to train, supervise and control their subordinates, and failed to institute sufficient policies and safeguards to insure the the MCJ legal department does not use their

Statement of Facts For Each Cause of Action

Claim II (continued)

authority and control to retaliate against and penalize Pro Per inmates for their exercise of constitutional rights, which was the moving force behind the constitutional violation.

53. On 11/21/2011, after more than 3 years of disciplinary free programming and housing in the MCJ general population, defendant Gilbert ordered plaintiff Floyd Nelson moved from module 2700, reclassified from a low custody level 7 to a high custody level K-10 and placed in the security housing "High Power" module. Plaintiff was informed by the escorting deputy (Thurman) who moved him from module 2700 to the security housing "High Power" module that his reclassification and transfer was ordered by defendant Gilbert in conjunction with defendants Lavey and D. Hriton for his statements made to the ACLU and LASD Internal Criminal Investigators in their investigation of LASD personnel excessive use of force against Pro Per inmate William Tilman in the 2500 Pro Per module. Ironically and coincidentally it should be noted that LASD Dep. Thurman is one of the LASD deputies alleged to have been involved in the excessive use of force claim against Pro Per inmate William Tilman.

54. The LASD has instituted a policy, custom and practice of using retaliatory transfers and reclassifications against inmates for the exercise of First Amendment rights. This policy, custom and practice has been authorized and approved by defendant's Leroy D. Baca, Larry L. Walche, Paul K. Tanaka, Marvin D. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,      Legal Lt. Lavey Legal Sgt. Sr. Gilbert, William T. Fujioka, the County of Los Angeles and each of their predecessors over the course of several decades, each of who are final decision makers of this policy, custom and practice. Defendants have failed to train, supervise and control their subordinates, and failed to institute sufficient policies and safeguards to insure reclassifications and transfers are not motivated for purposes of retaliation for the exercise of First Amendment rights, which was the moving force behind the constitutional violation.

55. On 12/1/2011 this Honorable Court issued its Order Dismissing Plaintiff's Complaint

(40 of 45)

Statement of Facts for Each Cause of Action

Claim II (continued)

with leave to Amend which was mailed to plaintiffs the same day. Plaintiff Floyd Nelson did not receive his copy of this court's order from defendant D. Hinton until 12/14/2011 a week after defendant Alonzo Harris was issued his copy. Both plaintiffs are housed in the 1750 "High Power" module with the same court dates, so why one receive legal mail from defendant D. Hinton in a timely manner and the other one doesn't is beyond suspicious, considering the facts outlined and described in this claim.

Policies, Customs and Practices

Claim I

1. De'Facto discriminatory race-based policy of selectively targeting Black and Hispanic suspects for disparate treatment based solely on their race.
   Authorized By: Defendants William J. Bratton, Charles Beck, Anthony Villariagosa, John Mack, Carmin A. Trutanich, Steve Cooley, City of Los Angeles.

2. Practice of using VCT to initiate unprovoked OIS against Black and Hispanic suspects.
   Authorized By: Defendants William J. Bratton, Charles Beck, Anthony Villariagosa, John Mack, Carmin A. Trutanich, Steve Cooley, Adam Bircovici, Anthony Avila, Joe Callian, City of Los Angeles.

3. Policy and custom of creating dangerous situation for unprovoked and unjustified OIS to occur primarily against Black and Hispanic suspects that can be deemed justified at conclusion of shooting investigation.
   Authorized By: Defendants William J. Bratton, Charles Beck, Anthony Villariagosa, John Mack, Carmin A. Trutanich, Steve Cooley, Adam Bircovici, Anthony Avila, Joe Callian, Charles Bennett, City of Los Angeles.

4. Policy and custom of creating dangerous situation for unprovoked and unjustified excessive use of force (assault-battery) to occur primarily against Black and Hispanic suspects that can be deemed justified at conclusion of arrest.
   Authorized By: Defendants William J. Bratton, Charles Beck, Anthony Villariagosa,

(41 of 45)

Policies, Customs and Practices

Claim I (continued)

John Mack, Carmen A. Trutanich, Steve Cooley, Adam Bircovici, Anthony Avila, Joe Callian, Charles Bennett, City of Los Angeles.

5. Practice of indemnifying SIS from punitive damages resulting from OIS.

Authorized By: Carmen A. Trutanich, Anthony Villaraigosa, John Mack, City of Los Angeles

6. Policy and custom of fabricating evidence against Black and Hispanic suspects to justify OIS.

Authorized By: Defendants William J. Bratton, Charles Beck, Anthony Villaraigosa, John Mack, Carmen A. Trutanich, Steve Cooley, Adam Bircovici, Anthony Avila, Joe Callian, Charles Bennett, City of Los Angeles.

7. District Attorney's Bureau of Specialized Prosecutions - Crimes Against Peace Officers Section practice, custom and policy of conspiring with SIS in OIS to protect LAPD against criminal and civil liability.

Authorized By: Defendants Steve Cooley, John K. Spillane, Curtis A. Hazel, Richard Doyle, Frank M. Tavelman, Susan Schwartz, William Bratton, Charles Beck, Anthony Villaraigosa, John Mack, Carmen A. Trutanich, Adam Bircovici, Anthony Avila, Joe Callian, Charles Bennett, City of Los Angeles

Claim II

1. Practice and custom of censoring authorized mail without notice to the inmate.

Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Danial Cruz, John/Jane Doe(s) No. 1-5, William T. Fujioka, County of Los Angeles.

2. Practice and custom of not responding to LASD inmate grievances/complaints challenging censorship of authorized mail.

Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Danial Cruz, John/Jane Doe(s) No. 1-5, William T. Fujioka, County of Los Angeles.

3. Policy, practice and custom of not allowing internet-generated materials and

(42 of 45)

Policies, Customs and Practices

Claim II (continued)

  Newspaper articles into MCJ.

    Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin
    D. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt. Lavey
    Legal Sgt., John/Jane Doe(s) No. 1-5, William T. Fujioka, County of Los Angeles.

4. Custom and Practice of reading Pro Per inmates legal documents "word for word" and
    "line for line."

    Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin
    D. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt.,
    Lavey Legal Sgt., William T. Fujioka, County of Los Angeles.

5. Custom and practice of threatening and retaliating against Pro Per inmates who challenge
    unprofessional conduct of LASD MCJ Legal staff.

    Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin D.
    Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt., Lavey
    Legal Sgt., William T. Fujioka, County of Los Angeles.

6. Custom and practice of obstructing and interfering with Pro Per inmates rights and privileges.
    Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin D.
    Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt., Lavey
    Legal Sgt., William T. Fujioka, County of Los Angeles.

7. "Post-Card only" and "Telephone Call Restriction" policy.
    Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin
    D. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt., Lavey
    Legal Sgt., Sr. Gilbert, William T. Fujioka, County of Los Angeles

8. Custom and practice of using fear, intimidation, threats and physical violence as a
    means of retaliation against inmates for their exercise of First Amendment rights.
    Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin
    D. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt.,
    Lavey Legal Sgt., William T. Fujioka, County of Los Angeles

Policies, Customs and Practices

Claim II (continued)

9. Custom and practice of using witness intimidation tactics to discourage inmates from giving adverse testimony against LASD personnel.

   Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt., Lavey Legal Sgt., Sr. Gilbert, William T. Fujioka, County of Los Angeles.

10. Custom and practice of using Wilson Administrative Hearings as a means of retaliation to stifle dissent and legal protest from pro per inmates.

   Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt., Lavey Legal Sgt., William T. Fujioka, County of Los Angeles.

11. Custom and practice of denying proper inmates due process during Wilson Administrative Hearings
   Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt., Lavey Legal Sgt., William T. Fujioka, County of Los Angeles.

12. Custom and practice of not responding to LASD inmate appeals challenging Wilson Administrative Hearing Findings
   Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt., Lavey Legal Sgt., William T. Fujioka, County of Los Angeles.

13. Custom and practice of using retaliatory transfers and reclassifications against inmates for their exercise of First Amendment rights.
   Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, Marvin O. Cavanaugh, David L. Fender, Alexander Yim, Daniel Cruz,        Legal Lt., Lavey Legal Sgt., William T. Fujioka, County of Los Angeles.

14. Custom and practice of MCJ Legal Staff use of their authority and control to retaliate against and penalize pro per inmates for their exercise of constitutional rights.
   Authorized By: Defendants Leroy D. Baca, Larry A. Waldie, Paul K. Tanaka, et al.

**E.  REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

1. The policies, customs and practices of each defendant described in this complaint amounted to deliberate indifference to the constitutional rights of persons, such as the plaintiffs, who are citizens, suspects, pretrial detainees and pro per inmates

2. As a direct and proximate result of the policies, customs and practices of each defendant described in this complaint, plaintiffs have suffered injury, loss and damage, including being shot, kicked in the face, retaliated against for the exercise of constitutional rights, interference with Faretta rights, obstruction of court access

3. As a result of policies, customs and practices of each defendant described in this complaint in Claim I, plaintiff Floyd Nelson has incurred medical expenses in the amount of $60,000.00.

4. Compensatory damages from the LAPD in the amount of $1,000,000.00

5. Compensatory damages from the DA in the amount of $1,000,000.00

6. Compensatory damages from the City Attorney in the amount of $1,000,000.00

7. Compensatory damages from the City Counsel in the amount of $1,000,000.00

8. Compensatory damages from the City of Los Angeles in the amount of $1,000,000.00

9. Compensatory damages from each defendant listed in Claim I in the amount of $1,000,000.00

10. Compensatory damages from the LASD in the amount of $1,000,000.00

11. Compensatory damages from the Board of Supervisors in the amount of $1,000,000.00

12. Compensatory damages from the County of Los Angeles in the amount of $1,000,000.00

13. Compensatory damages from each defendant listed in Claim II in the amount of $1,000,000.00

14. Punitive damages from the LAPD, DA and City of Los Angeles in the amount of $1,000,000.00 each

15. Punitive damages from each defendant in Claim I listed in their individual capacity for $1,000,000.00 each

16. Punitive damages from the LASD and County of Los Angeles in the amount of $1,000,000.00 each

17. Punitive damages from each defendant in Claim II listed in their individual capacity for $1,000,000.00 each

18. Declaratory and injunctive relief enjoining defendants in Claim II from the continued violation of plaintiffs' constitutional rights as it relates to retaliation for the exercise of constitutional rights, interference with Faretta rights and obstruction of court access

19. Any and all other relief the court deems appropriate and just.

DECEMBER 24, 2011
_____
(Date)

DECEMBER 24, 2011
_____
(Date)

Floyd H. Nelson
_____
(Signature of Plaintiff)

Alonzo Harris (aka Felton Bradford)
_____
(Signature of Plaintiff)

*Proof of Service — Mail*

## PROOF OF SERVICE

Re:     Case Number CV-11-5407-PSG (JPR)

Case Title Floyd H Nelson, et al. v. City of Los Angeles, et al.

---

I hereby declare that I am a citizen of the United States, am over 18 years of age, and (am)/am not a party in the above-entitled action. I am ~~employed in~~ (reside in) the County of Los Angeles                              and ~~my business~~ (residence address) is 441 Bouchet St. 1750 2-8, Los Angeles, CA 90012

---

On December 24, 2011                      , I served the attached document described as a First Amended Complaint

---

on the parties in the above-named case. I did this by enclosing true copies of the document in sealed envelopes with postage fully prepaid thereon. I then placed the envelopes in a U.S. Postal Service mailbox in Los Angeles            , California, addressed as follows:

United States Central District Court
Southern Division
411 W. Fourth St., Suite 1053
Santa Ana, Ca   92701-4516

I, Floyd H. Nelson                              , declare under penalty of perjury that the foregoing is true and correct.

Executed on December 24, 2011            , at Los Angeles                , California.

_____
Signature