1  Floyd H. Nelson * A41880
2  PO Box 3481   4B4L-24
3  Corcoran, CA  93212
4  Alonzo Harris * A41863
5  PO Box 3456   JDKM H HUD 1-3
6  Corcoran, CA 93212
7
8  Pro Se Plaintiffs
9
10           United States District Court
11           Central District of California
12
13  Floyd Hills Nelson and Alonzo Harris,
14                              Plaintiffs.
15                      v.
16  City of Los Angeles, City Council of Los
17  Angeles, City Attorney's Office, City
18  Councilmembers Doe(s) no. 1-15, Los
19  Angeles Police Department, Carmen A.
20  Trutanich, Charles Beck, William
21  Bratton, Joseph Calhan, Jeffrey Nolte,
22  Gustavo Ramirez, Diana Herron, David
23  Friedrich, Jason Delacova ; Pavon
24  Enterprises inc. Doe(s) no. 16-20.
25                  City Defendant's.
26  County of Los Angeles, Los Angeles
27  County Sheriff's Department, Donald
28  Hinton, George Lavey, William Gilbert



CASE NO. CV11-5407 PSG(JPR)

Second Amended Complaint

(1)

G. Thompson, Doe(s) no. 1-4,
County Defendants.

## I. Jurisdiction

1. This is a civil action authorized by 42 USC § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 USC §§ 1331 and 1343(a)(3). Plaintiffs seek declaratory relief pursuant to 28 USC §§ 2201 and 2202.

2. The Central District of California is an appropriate venue under 28 USC § 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. Plaintiffs

3. Plaintiff Floyd Hills Nelson is and at all times mentioned herein, was either a pre/post arrest civilian and/or pretrial detainee of the State of California in the custody of either the Los Angeles Police Department (LAPD) or the Los Angeles County Sheriff's Department (LASD). The events with the LAPD occurred pre and post arrest. The events with the LASD occurred while a pretrial detainee confined within the LASD Men's Central Jail (MCJ). He is currently confined in the California State Prison – Corcoran.

4. Plaintiff Alonzo Harris is and all time mentioned herein was either a pre/post arrest civilian and/or pretrial detainee of the State of California in the custody of either the LAPD or the LASD. The events with the LAPD occurred pre and post arrest. The events with the LASD occurred while a pretrial detainee confined within the LASD MCJ. He is currently confined in the California State Prison – Corcoran.

## III. City and County Defendants

5. City Defendant City of Los Angeles is a municipality who is being sued in its official capacity. At all times mentioned in this complaint is a municipality acting under color of state law

6. City Defendant City Council of Los Angeles is a municipality who is being sued in its official capacity. At all mentioned in this complaint is a municipality acting under color of state laws.

7. City Defendant City Attorney's Office is a municipality who is being sued in its official capacity. At all times mentioned in this complaint is a municipality acting under color of state laws.

8. City Defendants City Councilmember DOE(s) No. 1-15, ARE THE GOVERNMENT PERSONNEL who vote to determine punitive damage awards and which cases to post appeal bonds, each of who are being sued in their individual capacity. At all times mentioned in this complaint each of them acted under color of state law.

9. City Defendant Charles Beck is the Chief of Police for the LAPD who ratified the excessive use of force claim and investigation in this case. At all times mentioned in this complaint is a defendant who acted under color of state law and is being sued in his individual capacity.

10. City Defendant Carmen A. Trutanich is the Los Angeles City Attorney who is the government personnel who determined which cases to recommend to the City Council to pay punitive damage awards and which cases to post appeal bonds, who is being sued in his individual capacity. At all times mentioned in this complaint he acted under color of state law.

11. City Defendant William Bratton is the Chief of Police for the LAPD who ratified the excessive use of force claim and investigation in the instant case who is being sued in his individual capacity. At all times mentioned in this complaint he acted under color of state law.

12. City Defendant Joseph Callian is a LAPD police officer who, at all times mentioned in this complaint, held the rank of Detective III and was assigned to the Special Investigations Section (SIS) within the LAPD. This defendant is sued

1  in his individual capacity. At all times mentioned in this complaint he acted under
2  color of state law.
3  13. City Defendant Jeffrey Nolte is a LAPD police officer who, at all times mentioned
4  in this complaint, held the rank of Detective II and was assigned to the SIS within
5  the LAPD. This defendant is sued in his individual capacity. At all times mentioned in
6  this complaint he acted under color of state law.
7  14. City Defendant Gustavo Ramirez is a LAPD police officer who, at all times mentioned
8  in this complaint, held the rank of Detective II and was assigned to the SIS within
9  the LAPD. This defendant is sued in his individual capacity. At all times mentioned
10  in this complaint he acted under color of state law.
11  15. City Defendant Diane Herron is a LAPD police officer who, at all times mentioned
12  in this complaint, held the rank of Detective II and was assigned to the SIS within
13  the LAPD. This defendant is sued in her individual capacity. At all times mentioned
14  in this complaint she acted under color of state law.
15  16. City Defendant David Friedrich is a LAPD police officer who, at all times
16  mentioned in this complaint, held the rank of Detective II and was assigned to
17  the SIS within the LAPD. This defendant is sued in his individual capacity. At
18  all times mentioned in this complaint he acted under color of state law.
19  17. City Defendant Jason Dela Cova is a LAPD police officer who, at all times
20  mentioned in this complaint, held the rank of Detective I and was assigned to
21  the Robbery-Homicide Division (RHD) within the LAPD. This defendant is sued in
22  his individual capacity. At all times mentioned in this complaint he acted under color
23  of state law.
24  18. City Defendant Los Angeles Police Department (LAPD) is a municipality who is
25  being sued in its official capacity. At all times mentioned in this complaint is a
26  municipality acting under color of state law.
27  19. City Defendant Pavon Enterprises Inc. is and at all times mentioned in this
28  complaint the Towing service under contract with the LAPD (dba Al's Towing

located at 6180 s. St. Andrews Place, Los Angeles, Calif 90043) used to impound, store and sale Plaintiff Floyd H. Nelson's vehicle. This defendant is sued in his individual capacity. At all times mentioned in this complaint acted under color of state law.

20. County defendant County of Los Angeles is a municipality being sued in its official capacity. At all times mentioned in this complaint is a municipality acting under color of state law.

21. County defendant Los Angeles County Sheriff's Department (LASD) is a municipality being sued in its official capacity. At all times mentioned in this complaint is a municipality acting under color of state law.

22. County defendant Donald thinton is a Correctional Assistant who, at all times mentioned in this complaint, was employed with the LASD. This defendant is sued in his individual capacity. At all times mentioned in this complaint he acted under color of state law.

23. County defendant George Lavey is a Sergeant who, at all times mentioned in this complaint, was employed with the LASD. This defendant is sued in his individual capacity. At all times mentioned in this complaint he acted under color of state law.

24. County defendant William Gilbert is the Jail Liason who, at all times mentioned in this complaint, was employed with the LASD. This defendant is sued in his individual capacity. At all times mentioned in this complaint he acted under color of state law.

25. County defendant G. Thompson is a lieutenant who, at all times mentioned in this complaint, was employed with the LASD. This defendant is sued in his individual capacity. At all times mentioned in this complaint he acted under color of state law.

26. County defendants DOE(S) no. 1-4 are employees with the LASD. Each of these defendants are sued in their individual capacity. At all times mentioned

1   in this complaint acted under color of state law.

2

3   IV.   STATEMENT OF FACTS

4

5   Claim I:

6   a. EXCESSIVE USE OF FORCE under the Fourth Amendment. Graham v. Connor (1989)
7   490 US 386, 388; Love v. US (9th Cir 1989) 915 F2d 1242, 1245; Jennings v. Jones
8   (1st Cir. 2007) 499 F3d 2, 15-16; Vallardares v. Cordero (4th Cir. 2009) 552
9   F3d 384, 391.

10   b. Failure to intercede / protect. Cunningham v. Gates (9th Cir. 2000) 229 F3d
11   1271, 1289; Holtsinger v. Voros (9th Cir. 2011) 442 F. App'x 333, 334; Broam v.
12   Bogan (9th Cir. 2003) 320 F3d 1023, 1026 n.2

13   c. Failure to TRAIN, supervise and/or control subordinates. Board of County
14   Commissioners v. Brown (1997) 520 US 397, 407

15   d. Indemnifying LAPD against punitive damages in EXCESSIVE USE OF FORCE CASES.
16   TREVINO v. GATES (9th Cir 1996) 99 F3d 911; Navarro v. Block (9th Cir. 2001) 250 F3d
17   729, 731, 734; California Government Code § 825(b)

18   e. Ratifying EXCESSIVE USE OF FORCE CASES. Larez v. City of Los Angeles (9th Cir. 1991)
19   946 F2d 630, 645-48; City of St. Louis v. Praprotnik (1988) 485 US 122, 127.

20   f. Established LAPD policy, custom or practice caused constitutional violation.
21   Monell v. New York Dept. of Social Services (1978) 436 US 658, 690; Long v. County
22   of Los Angeles (9th Cir. 2006) 442 F3d 1178, 1185.

23   g. Illegal SEIZURE and sale of Plaintiffs vehicle without due process. Daniels v.
24   Williams (1986) 474 US 327, 331

25   h. Tow Company acted under color of state law and in COOPERATIVE Relationship
26   with LAPD. US v. Classic (1941) 313 US 299, 326; Lugar v. Edmondson Oil Co (1982)
27   457 US 922, 936-37; West v. Atkins (1988) 487 US 42, 54-55, 57; Smith v. Insley
28   Inc. (8th Cir. 2007) 499 F3d 875, 880.

27. At the conclusion of an approximate 45 day police undercover surveillance operation conducted by the LAPD "Special Investigations Section" Plaintiffs Floyd H. Nelson and Alonzo Harris (hereinafter "Plaintiffs" unless individually identified otherwise) were observed entering and exiting the closed Lawry's Prime Rib (LPR) after which it was determined and broadcasted over two-way police radio by SIS detectives that Plaintiffs had attempted to commit an armed robbery of the business establishment where each Plaintiff was armed with a firearm.

28. Via two-way police real-time radio, air and ground surveillance, City Defendants Joseph Cathan, Jeffrey Nolte, Gustavo Ramirez, Diana Herron and David Friedrich were informed of the following:

a. Plaintiffs attempted to rob the LPR.

b. Plaintiffs were each armed with firearms.

c. Plaintiffs did not physically injure the victim accosted inside the LPR.

d. Prior to entering and subsequent to exiting the LPR, Plaintiffs were under constant visual and electronic surveillance by City Defendants Cathan, Nolte, Ramirez, Herron, Friedrich and approximately (20) other LAPD personnel within the SIS undercover unit for approximately 45 days, during which time Plaintiffs did NOT demonstrate nor exhibit any signs of violence.

e. When Plaintiffs exited the LPR, Plaintiff Floyd H. Nelson was observed by SIS detectives and LAPD air surveillance personnel to have placed a black duffle bag suspected of containing their firearms and other robbery tools into the rear bed outer compartment of their Ford F-150 truck, all of which was broadcasted over two-way police real-time radio to City Defendants Cathan, Nolte, Ramirez, Herron, Friedrich and others within the SIS unit.

29. Once stationary behind a undercover SIS vehicle at the intersection of San Vicente Blvd and Fairfax Ave. On 7/11/2008 at approximately 5:50 am, SIS detective III Charles Bennett initiated the vehicle containment technique

1   (VCT) in conjunction with City Defendants Nolte, Ramirez, Herron and Friedrich

2   where he rammed/backed his vehicle (Ford F-150 Truck) into the front of Plaintiffs'

3   vehicle (Ford F-150 Truck) with sufficient force to jar the Plaintiffs inside

4   and to ram Plaintiffs' vehicle into the undercover SIS vehicle (Chevy Blazer)

5   occupied by City Defendants Nolte (driver) and Ramirez (passenger) directly

6   behind them while Plaintiffs' vehicle's engine transmission was still in the gear of

7   drive.

8   30. Approximately 1' - 3' away from and directly next to City Defendants

9   Nolte's and Ramirez's vehicle, and parallel to the rear of Plaintiffs' vehicle,

10  were City Defendants Herron and Friedrich in their undercover SIS vehicle

11  (Jeep Cherokee).

12  31. Simultaneous with the execution of the VCT, City Defendants Nolte, Ramirez,

13  Herron and Friedrich exited their respective vehicles with their guns drawn and

14  aimed at the Plaintiffs.

15  32. Immediately upon exiting their respective undercover vehicles and while attired

16  in plain undercover civilian clothing, without first identifying themselves as police

17  officers, City Defendant Nolte yelled "gun" at which time he and City Defendant

18  Ramirez, without any provocation from Plaintiffs, opened fire on Plaintiffs with

19  each of their firearms through the darkly tinted rear window of Plaintiffs'

20  vehicle.

21  33. Simultaneous to hearing City Defendant Nolte yell "gun", while personally

22  having a clear unobstructed view of each Plaintiff at a distance of approximately

23  5'-10' (a distance closer to Plaintiffs than City Defendants Nolte and Ramirez)

24  through the left driver's and passenger's side untinted windows, City Defendant

25  Herron stated at no time did she observe Plaintiffs in possession of any guns

26  and/or pointing gun(s) at any one from before the shooting started until

27  its conclusion, and that the only reason she discharged her firearm into

28  the occupied cab of Plaintiffs' vehicle was because she heard City Defendant

1  Nolte yell "gun", the first volley of gunfire that she heard and the shattering of
2  glass from the rear windows of Plaintiffs' vehicle.

3  34. Simultaneous to hearing City Defendant Nolte yell "gun", while personally
4  having a clear unobstructed view of each Plaintiff at a distance of approximately
5  5'-8' (a distance closer to Plaintiffs than City Defendants Nolte, Ramirez and
6  Herron) through the left driver's and passenger's side untinted windows, City
7  Defendant Friedrich stated that at no time did he observe Plaintiffs in possession
8  of any guns and/or pointing gun(s) at anyone from before the shooting started
9  until its conclusion after the second volley, which is why he testified at trial
10  that he did not discharge his firearm.

11  35. After the first volley of gunfire, Plaintiffs were instructed/ordered to raise
12  their hands by City Defendants Nolte, Ramirez, Herron and Friedrich after
13  they identified themselves as police officers for the first time. Plaintiffs complied by raising their
14  36. Approximately sixty (60) seconds later, Plaintiffs complied by raising their
15  empty hands, at which time a second volley of gunfire erupted from the rear of their
16  vehicle by City Defendants Nolte and Ramirez, resulting in Plaintiff Floyd H. Nelson
17  being shot several times in the left wrist and forearm, resulting in permanent
18  nerve damage and scarring.

19  37. At no time during this encounter did Plaintiff Floyd H. Nelson possess and/or
20  point a firearm at City Defendants Nolte, Ramirez, Herron, Friedrich and/or
21  anyone else.

22  38. At no time during this encounter did Plaintiffs attempt to escape from or evade
23  City Defendants Nolte, Ramirez, Herron, Friedrich or other LAPD law enforcement
24  personnel.

25  39. At no time prior to and/or during the first and second volley of gunfire initiated
26  and executed by City Defendants Nolte and Ramirez did City Defendants Herron
27  and Friedrich make any attempt to intercede and/or prevent the shooting from
28  occurring by informing City Defendants Nolte and Ramirez of each of their individual

1  unobstructed and clear observations that Plaintiffs were not armed and were not pointing
2  any weapons at any one, despite being aware of this fact prior to the first volley of shots
3  being discharged, the approximate ninety (90) to onehundred and twenty (120) second
4  lapse in time between the first and second volley of gunfire, being approximately
5  1'-3' away from City Defendant's Nolte and Ramirez, and all being directly connected
6  to each other by "Real Time" audio communication.

7  40. Once the second volley of gunfire was discontinued by City Defendant's Nolte
8  and Ramirez, Plaintiff Alonzo Harris was ordered by City Defendant Joseph Callian
9  to exit his vehicle and to lay face down on the ground with his fingers interlocked
10  behind his back.

11  41. Once handcuffed behind his back and without provocation or any form of
12  resistance, City Defendant Callian kicked Plaintiff Alonzo Harris in the face while
13  still prone on the ground with sufficient force to draw blood and produce semi-
14  unconsciousness.

15  42. Soon thereafter, Plaintiff Floyd H. Nelson was transported to Cedar Sinae
16  Hospital to undergo emergency surgery for the gunshot wounds sustained as a
17  direct result of the officer involved shooting (OIS) initiated against him moments
18  earlier by City Defendants Nolte, Ramirez and Herron.

19  43. While under anestisia and in surgery at Cedar Sinae Hospital, search
20  warrants were issued for several vehicles and residences belonging and/or
21  connected to Plaintiffs resulting in City Defendant Jason DelaCova authorizing
22  and instructing City Defendant Pavon Enterprises inc. (dba "Al's Towing") to
23  impound and store Plaintiff Floyd H. Nelson's vehicle (1997 Buick Skylark
24  lic.no. 3PCR634) for fingerprinting. This vehicle was legally parked and
25  located on 5th Avenue and Florence Avenue in the City of Los Angeles, and
26  was in no way connected to any of the crime(s) committed and/or under
27  investigation.

28  44. Once Plaintiff Floyd H. Nelson was transported to Cedar Sinae Hospital

1  for Emergency surgery. Plaintiff Alonzo Harris was transported to the Los
2  Angeles Police Department where he filed a Citizen's Complaint on Plaintiffs behalf
3  against the City Defendants involved in the Excessive use of force that had just
4  occurred against him and Plaintiff Floyd H. Nelson. This Citizen's Complaint was
5  determined to be unfounded and was Ratified by City Defendant William Bratton and Charles Beck.
6  45. Once the Officer involved shooting occurred, the LAPD initiated an internal
7  investigation through its Field Investigation Division (FID) of the events that
8  led up to and during the OIS, and it was concluded by the FID that the force
9  used against Plaintiffs was NOT Excessive. The Report/conclusions issued by
10 the FID was Ratified by City Defendant Bratton and Beck.
11 46. On the evening and night of 7/11/2008, once Plaintiff Floyd H. Nelson's Family Members
12 (Verrell N. Nelson and Ronisha F. Nelson-Hall) and Friend (Michael Anton) became
13 aware that his vehicle had been impounded and was being stored by City Defendant Al's
14 Towing, they immediately contacted its management personnel on a daily basis from
15 7/12/2008 thru 8/1/2008 concerning the status and Release of Plaintiff
16 Floyd H. Nelson's vehicle, and was informed by management personnel that City
17 Defendant Dela Cova had place a LAPD "Fingerprint" hold on the vehicle, and that
18 until this "Fingerprint" hold was lifted by City Defendants Dela Cova or the LAPD,
19 City Defendant Al's Towing was NOT authorized to Release it to anyone.
20 47. Plaintiff Floyd H. Nelson's Family Members (Verrell N. Nelson and Ronisha F. Nelson)
21 and Friend (Michael Anton) then provided City Defendant Al's Towing with each of their
22 contact information (i.e. home, business and cellular phone numbers, email and snailmail
23 addresses) with instructions to be immediately contacted once City Defendants LAPD and/or
24 Dela Cova lifted the "Fingerprint" hold, which City Defendant Al's Towing agreed to do
25 in addition to providing Plaintiff Floyd H. Nelson's Family and Friend with the contact
26 information (phone number) for City Defendant Dela Cova.
27 48. From 7/12/2008 thru 8/1/2008 Plaintiff Floyd H. Nelson's Family (Verrell N.
28 Nelson and Ronisha F. Nelson-Hall) Repeatedly and consistently (daily) contacted

1   City Defendant Dela Cova concerning the status of the "Fingerprint" hold he placed
2   on Plaintiff Floyd H. Nelson's vehicle and authorization for access to the interior
3   of the vehicle in order to retrieve important and valuable personal items, and
4   each time was told by City Defendant Dela Cova that once the vehicle was fingerprinted,
5   the vehicle hold would be lifted and he would contact them about releasing the
6   vehicle to them.

7   49. At this point Plaintiff Floyd H. Nelson's Family Members (Verrell N. Nelson and
8   Ronisha F. Nelson-Hall) provided City Defendant Dela Cova with each of their contact
9   information (i.e. home, business and cellular phone numbers, email and snailmail
10  addresses) and was assured by City Defendant DelaCova that he would contact
11  them directly once the vehicle hold was lifted.

12  50. During the criminal proceedings in case no. BA343411 it was revealed through
13  testimonial evidence that no fingerprints were ever taken from Plaintiff Floyd H.
14  Nelson's vehicle by City Defendants Dela Cova, LAPD or any other law enforcement
15  agency or personnel.

16  51. City Defendants Dela Cova nor Pavon Enterprise inc. (dba Al's Towing) never notified
17  Plaintiff Floyd H. Nelson, his Family Members (Verrell N. Nelson and Ronisha F. Nelson-Hall)
18  or his Friend (Michael Anton) that the vehicle hold for fingerprints had been lifted on
19  7/15/2008.

20  52. Prior to the sale of his vehicle, Plaintiff Floyd H. Nelson, his Family Members
21  (Verrell N. Nelson and Ronisha F. Nelson) was never notified of any impound or storage
22  fee(s) that may have been incurred as a result of the impounding of his vehicle.

23  53. On 8/20/2008 Plaintiff Floyd H. Nelson's vehicle was sold at auction by City
24  Defendant Pavon Enterprises inc (dba Al's Towing) to Denco Lien Sales inc. as a direct
25  result of Plaintiff Floyd H. Nelson, his Family Members (Verrell N. Nelson and Ronisha F. Nelson-
26  Hall) and Friend (Micheal Anton) never being informed that the vehicle hold placed on it
27  by City Defendant Dela Cova had been lifted on 7/15/2008, nor was any of them provided
28  notice by City Defendant Pavon Enterprises inc. of any lien on it based on impound and

1  STORAGE FEES.

2  54. Acting under color of State law and as a contracted Representative of City Defendants

3  City of LA and the LAPD. City Defendant Pavon Enterprises inc. Towed, impounded and

4  Stored Plaintiff Floyd H. Nelson's Vehicle at the direction of City Defendant Dela Cova.

5  55. City Defendant's Pavon Enterprises inc. and Dela Cova violated Plaintiff Floyd

6  H. Nelson's Constitutional Right to Due Process under the 14th Amendment for failing

7  to inform him that the "Fingerprint" hold placed on his vehicle had been lifted on

8  7/15/2008.

9  56. City Defendants Pavon Enterprises inc. and Dela Cova violated Plaintiff Floyd H.

10  Nelson's Constitutional Right to Due Process under the 14th Amendment by Failing to

11  inform and provide him advance or any notice of its intent to sell his vehicle at

12  auction in order to provide him an opportunity to object to its sale.

13  57. City Defendant Pavon Enterprises inc. unconstitutional policy and custom of not providing

14  advance notice to Plaintiff Floyd H. Nelson (and others similarly situated) of its intent

15  to sell his vehicle renders them liable under § 1983 since it took action which

16  inflicted injury against Plaintiff Floyd H. Nelson.

17  58. City Defendant Pavon Enterprises inc. intentionally acted when it impounded, stored

18  and sold Plaintiff Floyd H. Nelson's vehicle without providing him due process.

19  59. Plaintiff Floyd H. Nelson filed suit in the Small Claims Division of the Los Angeles

20  County Superior Court in case no. LAM10M08109 against City Defendants Pavon Enterprise

21  inc and Dela Cova for the recovery of damages from the unauthorized sale of his

22  vehicle. On 12/7/2010 this Small Claims action was dismissed without prejudice as

23  being premature.

24  60. In the approximate Fifthteen hundred (1,500) excessive use of force cases in which

25  City Defendants City Attorney has represented City Defendant LAPD personnel pursuant

26  to Cal. Govt. Code § 995 et seq. From 1992 until 2015 City Defendant City Council has

27  adhered to a policy or custom of voting to pay punitive damage awards in all but

28  100 of them.

61. In each of the aforementioned cases referred to in paragraph ("para") no. 60 City Defendant City Councilmembers Doe(s) no. 1-15 voted to pay punitive damage awards, none of them were done in good faith compliance as is required by Cal. Govt. Code § 825 (b).

62. In each of the aforementioned cases referred to in para no. 60, City Defendant City Councilmembers Doe(s) no. 1-15 voted to pay punitive damage awards, none of them were done on a discretionary, case by case, basis as is required by Cal. Govt. Code § 825 (b).

63. In each of the aforementioned cases referred to in para no. 60, City Defendant City Councilmembers Doe(s) no. 1-15 voted to pay punitive damage awards caused each of the injuries at issue in this claim by their decision to pay punitive damage claims on behalf of City Defendant LAPD personnel in excessive use of force cases.

64. City Defendant City Councilmembers Doe(s) no. 1-15 are governmental personnel each of who voted to pay punitive damage awards and/or to post appeal bonds in non-compliance with each of the criteria(s) set forth in Cal. Govt. Code § 825 (b).

65. On or about 7/12/2008 Plaintiff Alonzo Harris filed a Citizen's Complaint with City Defendant LAPD for the excessive force used against him and Plaintiff Floyd H. Nelson on 7/11/2008. This claim was provided Case no. CF no. 12-002753 and was ratified by City Defendants William Bratton and/or Charles Beck when they found the allegations in the complaint unfounded.

66. On 7/11/2008 City Defendant LAPD initiated an investigation into the shooting that involved City Defendants Nolfe, Ramirez and Herron by its internal FID providing it Case no. FID no. 062-08. This investigation and ultimate decision was ratified by City Defendants Bratton and/or Beck when they found that excessive force was not used against Plaintiffs.

67. City Defendants City of LA, City Council and LAPD have, since 1992 demonstrated a longstanding custom and policy of condoning excessive use of force committed

1  by LAPD personnel through its willingness to pay punitive damage awards and/or to
2  post appeal bonds in noncompliance with Cal. Govt. Code § 825 (b) in approximately
3  1400 of the approximate 1500 cases they have voted on between 1992 until 2015.
4  68. In the more than 1400 excessive use of force cases City Defendants City of LA, City
5  Council, City Attorney's Office and LAPD have agreed to pay punitive damages for, they
6  have done so by violating Cal. Govt Code § 825 (b) in that they have routinely voted
7  to pay punitive damages in those cases where LAPD personnel acted with malice against
8  their victims which was not in the best interest of the public.
9  69. In the more than 1400 excessive use of force cases City Defendants City of LA,
10  City Council, City Attorney's Office and the LAPD have agreed to pay punitive damages
11  for, each were made in bad faith and proximately caused the violation of Plaintiffs'
12  4th Amendment rights.
13  70. On or about 3/8/2011 Plaintiff Floyd H. Nelson filed a claim against City Defendants
14  Pavon Enterprises Inc. and Jayson Dela Cova that was forwarded to the Office of the
15  City Attorney and provided Claim No. C11-4148. This claim was never addressed nor
16  resolved.

18  Claim II:
19  a. Retaliation for exercising 1st Amendment rights. Rhodes v. Robinson (9th Cir.
20  2005) 408 F3d 559, 567-68; Rhodes v. Robinson (9th Cir. 2010) 621 F3d
21  1002, 1004.
22  b. Due Process Violations During Wilson Administrative Hearing. Wilson v.
23  Superior Court (1978) 21 Cal 3d 816, 827; Wolff v. McDonnell (1974) 418 US 539.
24  c. Due Process Violation in Moshite 1750 housing and indeterminate
25  confinement. Wolff v. McDonnell (1974) 418 US 539; Toussaint v. McCarthy
26  (9th Cir 1986) 801 F2d 1080, 1101-02.
27  d. Failure to Train, Supervise and/or control subordinates. Board of County
28  Commissioners v. Brown (1997) 520 US 397, 407

e. Established LASD policy, custom or practice caused constitutional violations. Monell v. New York Dept. of Soc. Serv. (1978) 436 US 658, 690; Long v. County of Los Angeles (9th Cir. 2006) 442 F3d 1178, 1185.

71. On or about 7/12/2008 Plaintiffs were housed in the MCJ of the LASD.

72. On or about 7/10/2010 Plaintiff Floyd H. Nelson moved into the MCJ Module 2500.

73. On or about 4/4/2011 Plaintiff Floyd H. Nelson experience a legal controversy with Correctional Assistant Tiffany Allen that resulted in Plaintiff filing a inmate complaint against her on or about 4/5/2011.

74. Soon thereafter, on or about 4/6/2011 Plaintiff Floyd H. Nelson was confronted by County Defendant Hinton regarding the inmate complaint he had filed against Tiffany Allen the previous day and was told by County Defendant Hinton that it would not be in his best interest as a Pro Per inmate to file inmate complaints against MCJ legal staff.

75. Plaintiff Floyd H. Nelson interpreted this statement made to him by County Defendant Hinton as a threat and to mean that he was keeping close tabs on the inmate appeals filed by Plaintiff Floyd H. Nelson and for Plaintiff not to file inmate appeals against MCJ legal staff because he would be retaliated against by LASD personnel if he continues to do so.

76. Plaintiff contends that filing inmate complaints is protected conduct that he does not need County Defendant Hinton's authorization to do.

77. On or about 4/24/2011 Plaintiff Floyd H. Nelson filed a inmate complaint directly to the LASD Headquarters regarding the unconstitutional conditions and treatment of Pro Per inmates inside the MCJ Module 2500.

78. Soon thereafter, on or about 4/30/2011 Plaintiff Floyd H. Nelson was confronted by County Defendant Hinton regarding the inmate complaint he had filed against the unconstitutional conditions and treatment of Pro Per inmates inside the MCJ Module 2500 and was told by County Defendant Hinton that in the future if Plaintiff

1  had any problems with how Module 2500 was being ran, to consult County Defendant

2  Hinton First.

3  79. Plaintiff Floyd H. Nelson interpreted this statement made by County Defendant

4  Hinton as a threat and to mean that he was keeping close tabs on the inmate appeals

5  filed by Plaintiff Floyd H. Nelson and for Plaintiff not to file inmate complaints

6  against the conditions and treatment of Pro Per inmates within Module 2500

7  without consulting him First.

8  80. Plaintiff contend that filing inmate complaints is protected conduct that he does

9  not need County Defendant Hinton's prior authorization to do.

10  81. On or about 5/1/2011 County Defendant G. Thompson authorized County Defendant

11  William Gilbert to institute a mail and phone censorship policy within the MCJ Modules

12  1700-1750 where all communications flowing into and out of the Modules would be

13  restricted to "Post Cards" and "Non-Cellular phones" only.

14  82. At the time of the implementation and enforcement of the LASD "Post Card and

15  Non-Cell Phone Only" policy Plaintiff Alonzo Harris was housed in Module 1750 as

16  a Self-Represented Defendant in criminal case No. BA343 411-01.

17  83. On several occasions, once the newly adopted LASD mail and phone censorship

18  policy began to be implemented and enforced in the MCJ Modules 1700-1750 by

19  County Defendants G. Thompson, W. Gilbert and Does No. 1-4, Plaintiff

20  Alonzo Harris was prohibited from communicating through the mail and over

21  the phone (with anyone who only had access to a cell phone) with his court

22  appointed experts (i.e. DNA, Cell Phone Triangulation, Expert Witness Identification, Private

23  Investigator, Police Procedures, and Transcription) since the information he sought to

24  send and/or receive from each of these experts that was crucial to his defense

25  were continuously rejected/censored by County Defendants Thompson, Gilbert and

26  Does No. 1-4 solely because neither mean of communication (written or audio) were

27  in compliance with the newly adopted "Post Card and Non-Cell Phone" only communications

28  policy.

(17)

84. Each time Plaintiff Alonzo Harris and his court appointed experts were denied the opportunity to communicate through either of these means of communication (mail and phone) by County Defendants Thompson, Gilbert and Doe(s) no. 1-4, Plaintiff Harris filed inmate complaints challenging their censorship and the constitutionality of the newly adopted LASD "Post Card and Non-Cell Phone Only" communications policy, none of which were processed by any of the County Defendants.

85. Although none of the inmate complaints filed by Plaintiff Harris challenging the censorship based on the newly adopted Module 1700-1750 "Post Card and Non-Cell Phone Only" communications policy were never processed or responded to, County Defendant Hinton would always confront Plaintiff Harris immediately after each filing and tell him to quit complaining like his co-defendant (Plaintiff Nelson) if he wanted to get his remaining Pro Per privileges and supplies handled in a timely manner, and each time Plaintiff Harris asked County Defendant Hinton what did he mean by the comment he told Plaintiff to continue filing inmate complaints and find out.

86. Plaintiff Alonzo Harris interpreted this statement made by County Defendant John Hinton as a threat and to mean that he was keeping close tabs on the inmate appeals filed by Plaintiff Harris and for Plaintiff to discontinue filing inmate appeals if he wanted to continue timely receiving his Pro Per privileges and supplies.

87. Plaintiff contend that filing inmate complaints is protected conduct that he does not need County Defendant Hinton's prior authorization to do nor should he be penalized or retaliated against for doing it.

88. As a direct result of his inability to effectively communicate with his court appointed experts due solely to the restrictions imposed by the newly adopted MCJ Module 1700-1750 "Post Card and Non-Cell Phone Only" communications policy that caused each of their attempts at communicating through the mail and over cellular phone to be rejected and/or censored, Plaintiff Alonzo Harris was forced to relinquish his Pro Per status in criminal case no. BA343 44-01.

89. As a supervisor, County Defendant G. Thompson authorized the implementation

and Enforcement of the "Post Card and Non-Cell Phone Only" communication policy in the MCJ Module 1700-1750 for he was fully aware of its unconstitutionality but elected to acquiescence in not only the conduct of his subordinate County Defendant Gilbert, but also acted in a manner that was deliberately indifferent to the protection of Plaintiff Harris' 1st Amendment rights by failing to discontinue the enforcement of this "Post Card and Non-Cell Phone Only" once he became aware of its unconstitutional affect on Plaintiff Harris' 1st and 14th Amendment rights.

90. As municipalities, the County of Los Angeles and the LASD are liable for the creation, implementation and enforcement of MCJ Unit Order 5-10-000 which is an official LASD policy that was the sole cause used to violate Plaintiff Alonzo Harris' 1st and 14th Amendment rights from 5/1/2011 through 12/1/2011.

91. On 5/5/2011 and 5/6/2011 Plaintiff Floyd H. Nelson filed inmate complaints directly to the LASD headquarters regarding additional unconstitutional conditions and treatment of Pro Per inmates housed within the MCJ Module 2500 and the MCJ attorney room.

92. On or about 5/10/2011 LASD Lieutenant Mike Bornman and Deputy J. Martinez from the LASD division of "Special Projects" came to the MCJ to visit Plaintiff Floyd H. Nelson and interview him regarding the inmate complaint he had filed on or about 4/24/2011. This confidential interview was audio recorded by each of these LASD personnel.

93. Soon after this confidential interview with the LASD "Special Projects" personnel Plaintiff Floyd H. Nelson was confronted by County Defendant Hinton who informed Plaintiff that "he was dissatisfied with the 5/10/2011 interview in that it discussed with "outsiders" how things were being ran in Module 2500 and that Plaintiff had previously been told to talk to him first in order to have any issues concerning how Module 2500 was being ran addressed.

94. Plaintiff Nelson then informed County Defendant Hinton that if things were being conducted according to the law and established Pro Per rules and procedures, then

(19)

1  he would not have to complain to "outsiders".

2  95. Plaintiff Floyd H. Nelson interpreted this statement made to him by County Defendant Hinton as a

3  threat and to mean that County Defendant Hinton was keeping close tabs on Plaintiff's

4  confidential visits in order to intimidate and discourage Plaintiff from speaking to

5  "outsiders" about how things in Module 2500 was ran without first consulting

6  County Defendant Hinton.

7  96. Plaintiff contends that speaking confidentially with LASD "Special Projects"

8  personnel is protected conduct which he does not need County Defendant

9  Hinton's prior authorization to do nor should he be penalized or retaliated

10  against for doing.

11  97. On or about 6/26/2011 legal staff from the American Civil Liberties Union

12  (ACLU) came to the MCJ to interview Plaintiff Floyd H. Nelson concerning the

13  contents on the inmate appeal he filed on or about 4/24/2011.

14  98. Soon after this interview with the legal staff from the ACLU, Plaintiff Floyd H.

15  Nelson was confronted by County Defendant Hinton who informed Plaintiff that he

16  was aware of and dissatisfied with the 6/26/2011 ACLU interview and that when

17  all was said and done, no matter who Plaintiff complained to, nothing would

18  actually change but his awareness of who actually holds the power within the

19  MCJ. Plaintiff asked County Defendant Hinton what did he actually mean by this comment,

20  and he was by County Defendant Hinton that time would reveal all.

21  99. Plaintiff Floyd H. Nelson interpreted this statement made to him by County

22  Defendant Hinton as a threat and to mean that County Defendant Hinton was

23  keeping close tabs on his legal visits in order to intimidate and discourage

24  Plaintiff from reporting LASD abuse and misconduct against Pro Per inmates

25  to the ACLU.

26  100. Plaintiff contends that speaking confidentially with the ACLU is protected

27  conduct which he does not need County Defendant Hinton's prior authorization

28  to do nor should he be threatened or retaliated against for doing.

101. On or about 7/26/2011 Plaintiff Floyd H. Nelson (along with several other Pro Per inmates housed in the MCJ Module 2500 on Baker Row) observed several LASD personnel (in the company and supervision of County Defendants Hinton and George Lavey) conduct a cell search of the entire Baker Row, during which time Plaintiff witnessed several LASD personnel enter Pro Per inmate Brian Alexik's assigned cell in his absence, against LASD policy and without video recording the cell search, and dispose of several items of personal legal documents and property by deliberately throwing those items in the trash.

102. On or about 7/28/2011 Plaintiff Floyd H. Nelson (along with several other Pro Per inmates housed in the MCJ Module 2500 on Baker Row) testified in the Los Angeles County Superior Court on behalf of Pro Per inmate Brian Alexik in criminal case No. BA370488 concerning Plaintiff's observations during the cell search of the entire Module 2500 Baker Row where he witnessed several LASD personnel (in the company and supervision of County Defendants Hinton and Lavey) conduct a search of Pro Per inmate Brian Alexik's cell, disposing of his personal legal documents and books in his absence and without authorization.

103. In preparation for, during, and immediately after this in-court testimony County Defendants Hinton, Lavey and several other LASD personnel singled out Plaintiff Floyd H. Nelson and the other testifying Pro Per inmates for harassment, threats and retaliation through the use of repeated and unjustified cell and body searches over a several day period, where they were told by County Defendant Hinton, in the presence of his immediate supervisor County Defendant Lavey, that "this is what you can expect when you agree to testify against LASD personnel."

104. Plaintiff Floyd H. Nelson interpreted this statement made to him by County Defendant Hinton as a threat and to mean that his cell was being repeatedly searched without cause because he agreed to testify against LASD personnel on behalf of Pro Per inmate Brian Alexik in criminal case No. BA370488.

105. Plaintiff contends that testifying in open court against LASD personnel is protected

(21)

1  conduct that he should not be retaliated against for doing.

2  106. As a supervisor, County Defendant Lavey authorized and oversaw the retaliatory

3  cell searches and threats made against Plaintiff Floyd H. Nelson and the other Pro Per

4  inmates who testified against LASD personnel in Criminal Case No. BA370488.

5  107. On or about 8/16/2011 legal staff from the ACLU came to the MCJ to interview

6  Plaintiff Floyd H. Nelson regarding the excessive use of force used against Pro Per

7  inmate William Tilman that he witnessed occur on or about 3/28/2011 in the MCJ

8  Module 2500

9  108. Soon after this interview with the legal staff from the ACLU, Plaintiff Floyd H.

10  Nelson was confronted by County Defendant Hinton who informed him that he was

11  aware and dissatisfied with the 8/16/2011 interview and that Plaintiff would likely

12  suffer consequences for giving statements to the ACLU against LASD personnel.

13  109. Plaintiff Floyd H. Nelson interpreted this statement made to him by County

14  Defendant Hinton as a threat and to mean that he was keeping close tabs on Plaintiff's

15  legal visits in order to intimidate and discourage Plaintiff from reporting LASD

16  abuse and misconduct to the ACLU.

17  110. Plaintiff contends that speaking confidentially with the ACLU is protected conduct

18  he should not be threatened or retaliated against for doing.

19  111. On 9/16/2011 Plaintiff Floyd H. Nelson's court appointed private investigator

20  Reginald Stewart was discovered by MCJ Attorney Room staff Correctional Assistant

21  . Mesa to have attempted to pass non-legal documents into the facility that were

22  secreted in a stack of legal documents destined to be given to Plaintiff. At the time

23  this infraction was discovered, Plaintiff Nelson was not inside the MCJ attorney

24  room nor did he ever gain possession of any of the non-legal documents that

25  were attempted to be passed by Mr. Stewart.

26  112. On 10/3/2013 Plaintiff Nelson first learned of the 9/16/2011 infraction by

27  Los Angeles County Superior Court Judge Stephen A. Marcus in Criminal Case

28  No. BA343411-02 when he was instructed to select another private investigator

1  since his previous one (R. Stewart) had been suspended from the court approved
2  panel pending investigation by the LASD into the 9/16/2011 infraction.
3  113. Soon thereafter, immediately upon returning from the 10/3/2011 court appearance to the
4  MCJ Module 2500, County Defendant Hinton "informally" notified Plaintiff Floyd H. Nelson
5  that he was personally conducting an internal LASD investigation into the 9/16/2011
6  infraction, and that although no evidence existed to directly connect Plaintiff to the
7  actual infraction committed, Plaintiff had irked County Defendant Lavey and several
8  of his other colleagues and supervisors within the MCJ legal unit with his willingness
9  to testify on behalf of Pro Per inmate Brian Alexik in criminal case no. BA370488, his
10 previous inmate complaint filed against MCJ legal staff Tiffany Allen, and both his written
11 and recorded complaints and statements to LASD internal investigators John Wargo
12 and associate, the legal staff of the ACLU regarding excessive force used against
13 Pro Per inmate William Tilman and Plaintiff's ongoing complaints to "outsiders" concerning
14 MCJ personnel obstruction of and interference with Pro Per inmates' constitutional
15 rights within the Module 2500, sufficient evidence existed to hold a Wilson
16 Administrative Hearing in order to effectuate the removal of Plaintiff's Pro Per status
17 and his expulsion from the 2500 Pro Per Module.
18 114. Plaintiff Floyd H. Nelson interpreted this statement made to him by County Defendant
19 Hinton as a threat and to mean that he had finally found a way to retaliate against and to
20 get rid of Plaintiff that was not available before and now he intended to take full
21 advantage of this opportunity in order to rescind Plaintiff's Pro Per status and expel him
22 from the 2500 Pro Per Module.
23 115. Plaintiff contends that each of his aforementioned conduct is protected speech which
24 he should not be retaliated against or penalized for doing.
25 116. On or about 10/5/2011 the ACLU issued its 2011 Annual Report of conditions and
26 abuse within the LASD Jail Facilities, which listed Plaintiff Floyd H. Nelson (anonymously)
27 as a witness of several instances of excessive use of force against inmates by LASD
28 personnel.

117. Soon after its publication County Defendant Hinton confronted and informed Plaintiff Nelson that he, County Defendant Lavey and several others within the MCJ legal unit were able to access and view the 2011 ACLU Annual Report on the internet through their office computer and, from the discussion(s) that followed, it was concluded that what they read was unexceptable and that Plaintiff would suffer definite repercussions/ consequences from it.

118. Plaintiff Floyd H. Nelson interpreted this statement made to him by County Defendant Hinton as a threat and to mean that County Defendants Hinton, Lavey and others within the MCJ legal unit discussed way(s) in which to retaliate against and penalize Plaintiff for reporting LASD personnel excessive use of force against inmates to the ACLU.

119. Plaintiff contends that publishing Plaintiff's statement(s) in the ACLU 2011 Annual Report is protected speech which he should not be retaliated against and penalized for.

120. On or about 10/10/2011 LASD Internal Criminal Investigations (ICI) Sergeant John Wargo and an associate came to the MCJ to conduct a confidential interview with Plaintiff Floyd H. Nelson regarding the excessive force he witnessed LASD personnel use against Pro Per inmate William Tilman on or about 3/28/2011.

121. Soon after this confidential interview concluded, County Defendant Hinton confronted Plaintiff Floyd H. Nelson and informed him that he was aware of Plaintiff's confidential interview with LASD ICI investigators and that it would not be in Plaintiff's best interest to continue with these confidential interviews

122. Plaintiff Floyd H. Nelson interpreted this statement made to him by County Defendant Hinton as a threat and to mean County Defendant Hinton was keeping close tabs on Plaintiff's confidential interviews with LASD ICI and that if Plaintiff continued cooperating with ICI he would be subjected to some type of retaliation from County Defendant Hinton and other LASD personnel.

123. Plaintiff contend that his confidential interviews with LASD I.C.I is protected conduct which he should not be penalized : or retaliated against for doing.

124. On 10/21/2011 County Defendant Hinton served Plaintiff Floyd H. Nelson with official Notice of Wilson Administrative Hearing for the 9/16/2011 infraction. It was at this time that Plaintiff initially informed County Defendant Hinton that he wanted to call the Reporting Employee Correctional Assistant . Mesa and his previous private investigator Reginald Stewart as defense witnesses at his upcoming Wilson Administrative Hearing.

125. On 10/21/2011 Plaintiff Floyd H. Nelson telephonically contacted his previous private investigator Reginald Stewart concerning his willingness to attend the upcoming Wilson Administrative Hearing in order to testify on Plaintiff's behalf as it related to Plaintiff's "non-involvement" in the 9/16/2011 infraction. Mr. Stewart expressed his willingness and availability which Plaintiff immediately informed County Defendant Hinton of for him to arrange.

126. On 10/25/2011 County Defendant Hinton, as the primary hearing officer, held a audio recorded Wilson Administrative Hearing without calling Plaintiff Floyd H. Nelson's requested defense witnesses ( . Mesa and R. Stewart ) nor providing him with a written or stated reason for the record why neither of these defense witnesses would be allowed to attend the hearing or why neither would be allowed to answer written questions submitted by Plaintiff prior to the start of the hearing.

127. Prior to the start of the audio recorded Wilson Administrative Hearing, Plaintiff Nelson stated for and on the record his objections to the Wilson Administrative Hearing being held without his requested defense witnesses ( . Mesa and R. Stewart). Each of who would have testified to Plaintiff's non-direct involvement in the 9/16/2011 infraction, and County Defendant Hinton serving in this dual capacity not only of as the sole investigator of the 9/16/2011 infraction, but also as a partial and biased hearing officer. Each of which County Defendant Hinton overruled and proceeded to conduct the Wilson Administrative Hearing.

128. On 10/28/2011 County Defendant Hinton issued Plaintiff Floyd H. Nelson his official Notice of Finding of Wilson Administrative Hearing completely revoking Plaintiff's in-custody Pro Per privileges, during which time County Defendant Hinton informed Plaintiff that these were the things that he could get away with doing with those inmates who chose to challenge the LASD, and that this was only the start of things to come.

129. Plaintiff Floyd H. Nelson interpreted this statement made to him by County Defendant Hinton as a threat and to mean that County Defendant Hinton used his authority as the primary hearing officer during the Wilson Administrative Hearing to violate Plaintiff's due process right to call witnesses and to present exculpatory evidence as a retaliatory means to revoke Plaintiff's in-custody Pro Per privileges and expell him from the Pro Per Module 2500 in order to retaliate against him for filing LASD inmate complaints and for reporting LASD personnel abuse of authority and excessive use of force to LASD investigators, the ACLU and the criminal court.

129. Plaintiff contends that prior to and during his Wilson Administrative Hearing he was entitled to due process and possessed a constitutional right to call witnesses, to present exculpatory evidence and to have a hearing held and conducted by an impartial and unbiased hearing officer.

130. On or about 10/29/2011 Plaintiff Floyd H. Nelson provided County Defendant Hinton his original LASD inmate complaint challenging the 10/28/2011 Wilson Administrative Hearing Findings to completely revoke his in-custody Pro Per privileges.

131. On or about 10/30/2011 Plaintiff Floyd H. Nelson provided County Defendants Hinton and Lavey with a copy of his original LASD inmate complaint challenging the 10/28/2011 Wilson Administrative Hearing Findings to completely revoke his in-custody Pro Per privileges, at which time County Defendant Lavey, in the presence of County Defendant Hinton and several Pro Per inmate witnesses housed in Module 2500 on Baker Row, stated to Plaintiff that he was fully aware of who Plaintiff was and that once Plaintiff decided to make statements to outside agencies against LASD personnel his fate was sealed, so quit complaining. Neither the original or copy of this LASD inmate appeal

1  was ever processed by LASD personnel.

2  132. Plaintiff Floyd H. Nelson interpreted this statement made to him by County Defendant

3  Lavey as a threat and to mean that he was keeping track of all the times Plaintiff filed

4  inmate complaints against MCJ legal staff, gave confidential statements to the ACLU,

5  the LASD ICI regarding LASD personnel abuse, misconduct and excessive use of

6  force against Pro Per inmates, and testified against him in court on behalf of Pro Per

7  inmate Brian Alexik in criminal case no. BA370488, and as such he intended to

8  utilize this opportunity to be rid of Plaintiff once and for all by not processing his

9  inmate appeal.

10  133. Plaintiff contends that he has a 1st, 6th and 14th Amendment constitutional right

11  not to have his Wilson Administrative Hearing used as a means by which County Defendants

12  Lavey and Hinton can retaliate against him for participating in protected conduct.

13  134. On 11/3/2011 Plaintiff Floyd H. Nelson attended a hearing in criminal case no.

14  BA343411-02 in front of the Honorable Superior Court Judge Stephen A. Marcus where

15  he was allowed an opportunity to argue against County Defendant Hinton and LASD's

16  recommendation to fully revoke Plaintiff's in-custody Pro Per privileges, at the

17  conclusion of which the Court deferred to the recommendation of County Defendants

18  as it related to fully revoking Plaintiff's in-custody Pro Per privileges but authorized

19  Plaintiff to retain his in-court constitutional right of self-representation while

20  both his administrative (LASD) and judicial appeals worked their way through

21  their respective system/process.

22  135. On 11/16/2011 Plaintiff Floyd H. Nelson refused to participate in further confidential

23  interviews with LASD ICI John Wargo and associate based solely on the ongoing threats

24  and retaliation initiated against him by County Defendants Hinton, Lavey and other

25  LASD personnel.

26  136. Soon after leaving the cancelled interview with LASD ICI John Wargo and

27  associate at MCJ on 11/16/2011, Plaintiff Floyd H. Nelson was expelled from the MCJ

28  Module 2500 by County Defendant Hinton and rehoused in Module 2700 on the orders

(27)

of County Defendants Hinton and Lavey because, according to County Defendant Hinton, Plaintiff's continued cooperation with the ACLU and LASD ICI.

137. Immediately following rehousing in Module 2700 Plaintiff Floyd H. Nelson began to experience serious problems and delays in the processing and issuance of his incoming legal mail, receiving access to court authorized ancillary defense funds, legal supplies and phone access, all of which were controlled by County Defendants Hinton and Lavey, and other MCJ legal staff.

138. On 11/21/2011, without cause, notice or due process, Plaintiff Floyd H. Nelson was rehoused from the Module 2700 general population where, since his arrest and incarceration on 7/4/2008 he has remained disciplinary free and classified as a low custody LEVEL 7 inmate, he was moved into the Maximum Security Module 1750 and reclassified as a high custody LEVEL K-10 inmate on the orders of County Defendants William Gilbert, Lavey and Hinton, with authorization from Supervisor County Defendant G. Thompson.

139. Plaintiff Floyd H. Nelson has stated valid and concise due process claims against County Defendants Hinton and Gilbert.

140. Plaintiffs have stated valid and concise retaliation claims against County Defendants Hinton, Lavey and Gilbert.

141. Plaintiffs allege retaliatory actions of County Defendants Hinton, Lavey and Gilbert in that

    a. Each Plaintiff was engaged in the protected conduct of
- Filing inmate grievances
- Talking with jail and ACLU investigators
- Testifying in open court against LASD personnel

    b. A causal connection exist between Plaintiffs' protected conduct and each County Defendants' retaliatory actions in that
- County Defendant(s) often specifically referenced Plaintiffs' protected conduct when threatening or taking the adverse/retaliatory action.

(28)

- County Defendant(s) often took the adverse / retaliatory action soon after Plaintiffs filed inmate grievances, spoke with jail or ACLU investigators, testified in open court against LASD personnel or engage in otherwise protected conduct.
- County Defendant(s) threats and other retaliatory actions "chilled" Plaintiffs' exercise of their 1st and 14th Amendment rights through Plaintiff Harris relinquishing his in propria persona status in case no. BA 343411-01 and Plaintiff Nelson's refusal to continue confidential interviews with LASD IGI investigators because of his fear of further reprisals / retaliation.
- County Defendant(s) retaliatory act of arbitrarily and abruptly rehousing and reclassifying Plaintiff Nelson without cause from the general inmate population and low custody Level 7 and confine him indefinitely in the maximum security Module 1750 as a high custody Level K-10 inmate without notice or procedural due process

c. County Defendant(s) retaliatory actions advance no valid penological interest in that

- County Defendants cite "institutional security" for revoking in it's entirety Plaintiff Nelson's in-custody pro per privileges, when said privileges had no relations or connection to the alleged infraction committed on 9/16/2011.
- County Defendants cite "institutional security" for placing and retaining Plaintiff Nelson indefinitely in the maximum security Module 1750 without cause or procedural due process, when prior to this arbitrary and abrupt reclassification and rehousing he maintained a disciplinary free record.

142. Plaintiffs allege municipal liability against County Defendants County of Los Angeles and the LASD for maintaining a longstanding policy, custom or practice of

- Failing and/or refusing to respond inmate appeals alleging LASD personnel misconduct and abuse as a means of concealment and retaliation.
- Destroying and/or failing to process inmate appeals alleging LASD personnel misconduct and abuse as a means of concealment and retaliation.

- Delaying and/or Refusing access to Pro Per legal supplies and ancillary defense funds to Pro Per inmates who vigorously EXERCISE their 1st and 16th Amendment Rights as a means of punishment and Retaliation.

- Using Wilson Administrative Hearing(s) as an arbitrary and Retaliatory means to silence Pro Per inmates who elect to vigorously EXERCISE their 1st Amendment Right to challenge and Report LASD personnel misconduct and abuse.

- Threatening and Retaliating against Pro Per inmate who challenge and Report LASD personnel misconduct and abuse.

- Reclassifying and rehousing inmates in the Maximum Security Module 1700-1750 indefinitely without due process solely as a means of Retaliation and punishment for the EXERCISE of 1st Amendment Rights.

143. On or about    12008 Cedar Sinai Hospital issued Plaintiff Floyd H. Nelson a medical bill in the amount of $65,000.00 for the Emergency surgery and medical treatment he received on 7/11/2008 as a direct Result of being shot several times by County Defendants Nolte and Ramirez

144. Plaintiffs have alleged City Defendants Carmen A. Trutanich, City Attorney's office, City Council, City Council Members 1-15; William Bratton and John Beck have each acted in bad faith and failed to EXERCISE independent, case by case, discretion in instituting, applying and Enforcing a policy, custom and practice of indemnifying LAPD personnel from punitive damage awards in EXCESSIVE force cases.

145. In several of the approximate 1,500 cases of EXCESSIVE use of force involving LAPD personnel, City Defendant Trutanich has personally recommended to the City Council those cases in which punitive damage awards and appeal bonds for LAPD personnel should be paid.

146. Few of these recommendations made by City Defendants Trutanich to the City Council to pay punitive damages and post appeal bonds in EXCESSIVE use of force cases were done in good faith or on a discretionary basis, but Rather were done as a longstanding policy, custom and practice of protecting LAPD personnel in EXCESSIVE

(30)

1  use of force cases where they acted with malice against their victims which was not
2  in the best interest of the public .

4  ## V. REQUEST FOR RELIEF

6  Plaintiff believe they are entitled to the following specific relief:
7  1. The policies, customs or practices of City and County Defendant Municipalities
8  described in this complaint amount to deliberate indifference to the constitutional
9  rights of persons, such as the Plaintiffs, who are citizens, suspects, pretrial
10  detainees and proper inmates.
11  2. As a direct and proximate result of City and County Defendant Municipalities'
12  policies, customs or practices described in this complaint, Plaintiffs have suffered
13  injury, loss and damage, including being shot multiple times and kicked in the
14  face without cause, personal property being impounded and sold without notice
15  and due process, retaliated against for the exercise of constitutional rights,
16  interference with Faretta rights and court access, and being reclassified and
17  rehoused indefinitely in maximum security without notice and due process.
18  3. As a direct and proximate result of City Defendant Municipalities' policies,
19  customs or practices described in Claim 1 of this complaint, Plaintiff Floyd
20  H. Nelson has incurred medical expenses in the amount of $ 65,000.00 and
21  loss of personal property in excess of $ 5,000.00.
22  4. As a direct and proximate result of being shot multiple times by City
23  Defendants Jeffrey Nolte, Gustavo Ramirez and Diana Herron, Plaintiff
24  Floyd H. Nelson has incurred medical expenses in the amount of $ 65,000.00.
25  5. As a direct and proximate result of having his personal property illegally
26  seized and sold by City Defendants Jason Dela Cova and Pavon Enterprises
27  Inc., Plaintiff Floyd H. Nelson has suffered a loss of personal property in
28  excess of $ 5,000.00.

6. Compensatory damages from City Defendants City of Los Angeles, City Council, City Attorney's Office and the LAPD in the amount of $1,000,000.00 for each of them.

7. Compensatory damages from City Defendants William Bratton, Charles Beck, Carmen A. Trutanich and City Council Members Doe(s) No. 1-15 in the amount of $500,000.00 for each of them.

8. Compensatory damages from City Defendants Jeffrey Nolte, Gustavo Ramirez, Diana Herron, David Friedrich and Joseph Callian in the amount of $500,000.00 for each of them.

9. Compensatory damages from City Defendants Jason Dela Cova and Pavon Enterprise Inc. in the amount of $5,000.00 for each of them.

10. Punitive damages from City Defendants Bratton, Beck, Trutanich and City Council Members Doe(s) No. 1-15 in the amount of $1,000,000.00 for each of them.

11. Punitive damages from City Defendants Nolte, Ramirez and Callian in the amount of $2,000,000.00 for each of them.

12. Punitive damages from City Defendants Dela Cova and Pavon Enterprise Inc. in the amount of $15,000.00 for each of them.

13. Compensatory damages from County Defendants County of Los Angeles and the LASD in the amount of $1,000,000.00 for each of them.

14. Compensatory damages from County Defendants Donald Hinton, George Lavey, William Gilbert and G. Thompson in the amount of $500,000.00 for each of them.

15. Punitive damages from County Defendants Hinton, Lavey and Gilbert in the amount of $1,000,000.00 for each of them.

16. Declaratory Relief declaring the rights of Plaintiffs.

17. Appoint counsel to represent the interest of each Plaintiff.

18. Any and all other relief the court deems appropriate and just.

Date: 4/27/2015

Floyd H. Nelson, Pro Se Plaintiff

Date: 4/27/2015

Alonzo Harris, Pro Se Plaintiff

(32)

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY
(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _Floyd H. Nelson_____, declare:

I am 18 years of age and a party to this action. I am a resident of _Corcoran, CA_

_____ _Corcoran State_____ Prison,

In the county of _Kings_____,

State of California. My Prison address is: _PO Box 3481  4B42-24_____,

_____ _Corcoran, CA  93212_____,

On _4/30/2015_____
         (Date)

I served the attached: _Second Amended Complaint_____

_____

(DESCRIBE DOCUMENT)

On the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

US Central District Court          Melinda W. Ebelhar, Esquire
Attn: Office of the Clerk          Collins Collins Whurt Stewart LLP
411 W. Fourth St, Ste 1-053        1100 El Centro St
Santa Ana, CA  92701               So. Pasadena, CA  91030

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _4/30/2015____              _____
                  (DATE)                      (DECLARANT'S SIGNATURE)

Civ-69(REV 9/97)

## PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY
(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _Floyd H. Nelson_ , declare:

I am 18 years of age and a party to this action. I am a resident of _Corcoran, CA_

_____ _Corcoran State_ Prison,

In the county of _Kings_ ,

State of California. My Prison address is: _PO Box 3481   4B4L-24_

_____ _Corcoran, CA   93212_ ,

On _4/30/2015_
_____
(Date)

I served the attached: _Second Amended Complaint_

_____
(DESCRIBE DOCUMENT)

On the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

United States Central Dist Court
Attn: Office of the Clerk
411 w. Fourth St, Ste 1-053
Santa Ana, CA   92701

Kelly D. Kades, Dep. City Atty
City Hall East
200 N. Main St, 6th Fl
Los Angeles, CA   90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _4/30/2015_
          (DATE)

_____
(DECLARANT'S SIGNATURE)

Civ-69(REV 9/97)



Floyd Nelson # AU8880
B. POBOX 3481  4B1H4B...
CORCORAN, CA  93212

Confidential Legal Mail

RECEIVED
CLERK, U.S. DISTRICT COURT
SOUTHERN DIVISION

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

MAY 6 2015

CORCORAN
STATE PRISON

U.S. CENTRAL DISTRICT COURT
ATTN: OFFICE OF THE CLERK
411 W. Fourth St, Suite 1-053
Santa Ana, California
92701-4516

US POSTAGE > PITNEY BOWES
ZIP 93212  $ 002.03°